**SO ORDERED.**

**SIGNED this 10 day of May, 2006.**

_____
**LARRY E. KELLY**
**UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| IN RE: § | | |
| § | CASE NO. 05-61649-LEK | |
| **THERESE P. FORD,** § | | |
| Debtor. § | Chapter 7 | |

_____

| | | |
|---|---|---|
| **THERESE P. FORD,** § | | |
| Plaintiff, § | | |
| § | | |
| v. § | ADVERSARY NO. 05-6023 | |
| § | | |
| **TEXAS HIGHER EDUCATION** § | | |
| **COORDINATING BOARD, ST. MARY'S** § | | |
| **UNIVERSITY, TEXAS LUTHERAN** § | | |
| **UNIVERSITY, TEXAS GUARANTEED** § | | |
| **STUDENT LOAN CORP., AND** § | | |
| **CENTRAL TEXAS HIGHER** § | | |
| **EDUCATION AGENCY,** § | | |
| Defendants. § | | |

### MEMORANDUM OPINION

On February 8, 2006 the Court conducted a trial in the above styled adversary proceeding. In this suit, the Debtor, Therese P. Ford ("Plaintiff Ford") seeks to receive a

hardship discharge under 11 U.S.C. § 523(a)(8) of approximately $225,677 in student loan debt that she states she owes Texas Lutheran University, St. Mary's Law School, Educational Credit Management Corporation ("ECMC"),[1] Texas Higher Education Coordinating Board ("THECB"), Texas Guaranteed Student Loan Corporation ("TGSLC"), and the Central Texas Higher Education Agency. St. Mary's Law School and the Central Texas Higher Education Agency did not file an answer to the allegations made in Plaintiff Ford's complaint.

At trial, Plaintiff appeared, representing herself pro se. Attorneys for Defendants ECMC, THECB, and TGSLC appeared. Texas Lutheran University did not appear at trial.

This is a core proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(I). After considering all of the evidence received at the trial, as well as the pleadings on file, the following represents the Court's findings of fact and conclusions of law made pursuant to Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52.

## Background

Plaintiff Ford filed a chapter 7 bankruptcy case on July 13, 2005. By this suit, she is attempting to stop collection of the student loan debt she incurred. Specifically, she asks the Court to enter declaratory judgment that the student loan debt is dischargeable under § 523(a)(8). Additionally, she seeks an injunction prohibiting Defendants from collecting the debts or withholding her official transcripts. Plaintiff Ford asserts that she meets the requirements set by case law to have the debt held dischargeable: 1) she has made a good faith effort to communicate with Defendants, she has sought charitable assistance to help with repayment, and she has attempted to keep the debts in forbearance or deferment; 2) she has been unable to pay on the debts because her expenses have always exceeded her income; and 3) this situation has continued for over three years, and her financial situation is not going to change because her income will not increase in the future by $3500, the additional income amount needed to make the payments on the student loan debts after paying taxes and other expenses. In other words, she argues that, if she is required to repay the debts, she will be placed in a position of undue hardship because she will not be able to maintain a minimal standard of living.

---

[1] ECMC was substituted in place of Sallie Mae Servicing for nine loans only. See Findings of Fact No. 5 for a listing of the nine loans.

The Defendants argue that Plaintiff has the burden of proof to show the requirements set by case law to have the debts held nondischargeable. They assert she cannot support this burden of proof. None of the parties dispute the material facts surrounding the creation or repayment of the student loan debts at issue.

During trial, Plaintiff Ford admitted into evidence Exhibits 1 through 47 and 71 through 89. Plaintiff's Exhibits 90 through 162 were admitted only to show that Plaintiff corresponded with the entities reflected on those exhibits but not to prove the accuracy of the information contained in those exhibits. Plaintiff's Exhibits 48 through 70 were denied admission into evidence. Defendant ECMC admitted into evidence Exhibits 1 through 87. Defendant TGSLC admitted into evidence Exhibits 1-6. Plaintiff Ford testified on direct and cross-examination. All parties presented argument for and against the hardship discharge request.

Findings of Fact

1. Plaintiff Ford is a divorced mother of three children, one of whom lives with her and one child who will return soon.

2. After receiving a G.E.D. diploma from high school and attending classes at two community colleges, Plaintiff completed her undergraduate degree at Texas Lutheran University and completed all course requirements for a law degree at St. Mary's University School of Law.

3. Plaintiff Ford financed her college education, including the post-graduate study, with the student loans at issue.

4. Plaintiff Ford's Schedule F of unsecured debt listed a total unsecured debt of $253,885.31. Of this amount, $233,441.87 was listed as student loan debt. All of the other unsecured debt was discharged by the discharge order issued on October 31, 2005 in Plaintiff Ford's chapter 7 bankruptcy case.

5. The purpose of the loans owed to the THECB was for Plaintiff to attend St. Mary's Law School. See Response of THECB to the Complaint. The original principal amount owed by Plaintiff Ford to THECB is $21,553.00, with this amount having grown, via the accrual of interest, to $32,278.79 as of January 26, 2006. See THECB Exhibit 1. These loans were all made under the Hinson-Hazlewood College Student Loan Program. See THECB's Exhibits 2-6.

THECB's exhibits admitted into evidence show the following:

    a.    Exhibit 2: Promissory Note covering disbursements made 8/8/1995 through 12/20/1995 in the amount of $7,500;

    b.    Exhibit 3: Promissory Note covering disbursements made 5/17/1996 through 8/6/1996 in the amount of $5,223;

    c.    Exhibit 4: Promissory Note covering disbursement made 11/15/1996 in the amount of $1,310;

    d.    Exhibit 5: Promissory Note covering disbursement made 5/9/1997 in the amount of $5,013; and

    e.    Exhibit 6: Promissory Note covering disbursements made 8/5/1997 through 12/24/1997 in the amount of $2,487.

All of these promissory notes were guaranteed by Plaintiff Ford's mother. Id. There was testimony that Plaintiff has made no payments on this debt and that Plaintiff's mother has made some of the payments on this debt.

6.    According to ECMC's Exhibit 77, the debt owed to ECMC is as follows:

    a.    Plaintiff executed the following promissory notes, totaling in the original principal amount of $74,000, to attend St. Mary's Law School:

| Loan No. | Loan Type | Disbursed Amt. | Disbursmt Date | Interest Rate |
| --- | --- | --- | --- | --- |
| Loan #1 | GSL | $8,500 | Dec. 26, 1996 | 6.1% variable |
| Loan #2 | GSL | $7,143 | Dec. 26, 1996 | 6.1% variable |
| Loan #3 | GSL | $2,857 | May 19, 1997 | 6.1% variable |
| Loan #4 | GSL | $8,500 | Aug. 5, 1997 | 6.1% variable |
| Loan #5 | GSL | $10,000 | Aug. 5, 1997 | 6.1% variable |
| Loan #6 | GSL | $8,500 | Aug. 18, 1995 | 6.1% variable |
| Loan #7 | GSL | $10,000 | Aug. 18, 1995 | 6.1% variable |
| Loan #8 | GSL | $8,500 | May 20, 1996 | 6.1% variable |
| Loan #9 | GSL | $10,000 | May 20, 1996 | 6.1% variable |

    b.    When Plaintiff filed for bankruptcy, all right, title and interest in the loans

4

    transferred to United Student Aid Funds, Inc. (USAF) from Sallie Mae Trust (SLMA) under the loans' guaranties.

  c. USAF transferred all right, title and interest in the loans to ECMC on or about September 9, 2005.

  d. ECMC is the current holder of the loans.

  e. The balance on the notes, as of January 24, 2006 is $120,316.81, including principal and interest. Interest accrues at the variable rate of currently 6.10% per annum or $19.60 per diem.

  f. Plaintiff has made no payments on this debt.

7. By its answer, the TGSLC admits that it guaranteed $61,150.40 in loans for Plaintiff. However, the answer does not state which specific loans it guaranteed.

8. Plaintiff's admitted Exhibit 47, a listing of federally backed or guaranteed student loan debt that Plaintiff owes, shows that she owed many other "Stafford" and "Perkins" loans than just the nine loans held by ECMC.

9. Texas Lutheran University submitted a letter response from its Accounting/Collections Department to the bankruptcy court. This letter response only bears the number of the bankruptcy case. However, because its date of August 3, 2005 is after the filing of this lawsuit on July 13, 2005, presumably, it is submitted an answer to Plaintiff's complaint; although it does not so state. This letter response states that Plaintiff left Texas Lutheran University on May 1, 1995 and that she owes the university an outstanding balance as of July 13, 2005 of $2,795.46. Texas Lutheran University did not provide any evidence to show how that debt was created and whether it relates to, or is part of, any of the student loan debt at issue. Texas Lutheran University did not appear at trial.

10. Plaintiff Ford's tax returns show the following: $55,628 adjusted gross income for 2003 (married filing jointly, her income of $26,729 and spouse's income of $29,149); $38,143 adjusted gross income for 2002 (married filing jointly, her income of $14,090 and spouse's income of $24,303); $38,528 adjusted gross income for 2001 (married filing jointly, her income of $12,613 and spouse's income of $25,915); and $16,284 adjusted gross income for 2000 (Plaintiff filing as a single).

11. Although having a law degree, Plaintiff Ford has not passed the State of Texas Bar

5

Examination, despite having made numerous (four) attempts between 1998 and 2000. She took twice, but did not pass either time, the Multistate Professional Responsibility Exam, a test that every applicant must pass as part of their application to receive a license to practice law in Texas.

12. She became an assistant real estate agent in early 2000, however, she did not maintain that career because, assuming she could pass the real estate licensing test, her delinquent student loan debt would keep her from receiving a real estate license.

13. In August 2002, she began work as a school teacher at Waco Independent School District, a job at which she performed well, until October 25, 2005, when she left for another job. She then began a new job at Worldwide Refinishing Systems, Inc.

14. Plaintiff made approximately $40,000 as a teacher, and at her new job at Worldwide Refinishing Systems, Inc., she makes $45,000 per year. She has increased deductions taken out of her salary at the new job. However, Plaintiff admitted that she receives approximately $440 in net income per month at her new job than when teaching.

15. Plaintiff recently increased her cost of living by renting another home, increasing her monthly rental cost from $560 for a loft-like one room apartment to $760 per month for a bigger home with separate rooms.

16. Plaintiff provided testimony regarding her prior unstable mental condition, her attempted suicide in January 2002, her need for counseling, and her children's need for counseling. She was unsure of the future cost of counseling for her children because she does not carry health insurance on the children at her new job because of the high cost of the insurance, and her ex-husband does not carry insurance on the child in Plaintiff's care.

17. Plaintiff provided testimony regarding the fact that she often eats at restaurants and sometimes makes other, more "luxury" purchases, such as going to bars or buying books..

18. Plaintiff provided testimony regarding the problems she has faced in finding employment, given that her unpaid student loan debt has prevented her from receiving official transcripts of her educational studies and prevented her from receiving a real estate license.

19. Plaintiff provided testimony of her current income and expenses and anticipated additional expenses in the future.

20. Plaintiff testified that she could not remember whether she or her then-husband

researched the ability to repay the debt through the William D. Ford Federal Direct Loan Program, a federal program with some repayment plans available to address various repayment needs. Plaintiff testified that she did not apply to the Ford program.

21. The student loan debt issued under Texas student loan programs is not subject to being repaid through the Ford program.

22. Plaintiff testified that she did not apply to something called the Texas Forbearance Program because of the ages of her loans did not qualify.

Conclusions of Law

1. The applicable Bankruptcy Code section is 11 U.S.C. § 523(a)(8) which provides that "[a] discharge does not discharge an individual debtor from any debt--(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependants; . . .."

2. In Brunner v. New York State Higher Educ. Serv. Corp., 831 F.2d 395, 396 (2d Cir.1987), the Second Circuit articulated a test by which to evaluate the undue hardship determination. The Fifth Circuit, noting that the Brunner test had been the most widely-adopted test for entitlement to a hardship discharge, specifically adopted this test when evaluating a § 523(a)(8) "undue hardship" cause of action. See United States Department of Education v. Gerhardt (In re Gerhardt), 348 F.3d 89, 91 (5th Cir.2003) (noting that the 3d, 4th, 7th, 9th, and 11th Circuits had adopted the Brunner test). The Fifth Circuit reiterated the Brunner test as follows:

> To justify discharging the debtor's student loans, the Brunner test requires a three-part showing:
> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [himself] and [his] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

In re Gerhardt, 348 F.3d at 91 (citing Brunner, 831 F.2d at 396); see also, Tollison v. Suntech,

7

Inc. (In re Tollison), 305 B.R. 656, 660 (Bankr. N.D. Miss. 2004) (same).

3. "In a § 523(a)(8) cause of action, both the creditor and the debtor have respective burdens of proof." In re Tollison, 305 B.R. at 660. "The creditor has the initial burden of establishing the following: (1) the existence of a debt; (2) made for an educational loan; (3) made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution." Id. "If the creditor meets this burden, the debtor must then prove that excepting the debt from discharge will impose an undue hardship." Id.

4. Here, there are no factual disputes that these loans meet the required debt factors, thus, Defendants have, in effect, met their burden.

5. Plaintiff Ford then must prove that her circumstances are such that she should receive a discharge of the debt under the three prongs of the Brunner/Gerhardt test.

6. Given the evidence presented here, the Court will begin its analysis with the third prong of Brunner/Gerhardt test.

Third Prong of Brunner/Gerhardt.

Plaintiff Ford must show that she has made a good faith effort to repay her debts. It was uncontradicted that Plaintiff has made no payments on any of the loans, although her mother made payments on the debt owed to Defendant THECB. However, it is not evidence of bad faith for a debtor to have not made payments on a debt if the person had no money with which to make the payments. There was evidence that Plaintiff Ford explored avenues to receive help from elected officials and from many charitable organizations to repay the debt. Also, there was evidence that Plaintiff Ford had not sufficiently explored the ability to secure repayment help through the William D. Ford Federal Direct Loan Program, a program that might help her, although she had no legal obligation to apply to such a program.[2] The Court determines that the

---

[2] The Ford Federal Direct Loan Program is a federal program with some repayment plans available to address various repayment needs. One of these options is called the Income Contingent Repayment Plan (ICMP), found at 34 C.F.R § 685.208. In § 685.208(a)(1) for Repayment Plans, this regulation states in general that "[a] borrower may repay a Direct Subsidized Loan, a Direct Unsubsidized Loan, a Direct Subsidized Consolidation Loan, or a Direct Unsubsidized Consolidation Loan under . . . the income contingent repayment plan." The ICMP is described in 34 C.F.R. § 685.208(f). In general, the ICMP provides that a borrower's net disposable income will be considered in determining a monthly repayment amount. When a borrower's income falls under the poverty level, there is no payment required, and, at the end of 25 years, any amounts that may remain due and owing on the loan are forgiven.

facts established show Plaintiff Ford made a good faith effort to repay her loans.

### Second Prong of Brunner/Gerhardt

Plaintiff Ford must show that "additional circumstances exist" which indicate the state of her financial affairs is likely to persist for a "significant portion of the repayment period of the student loans." The repayment period of these loans is indefinite, given the unilateral and retroactive annulment of the statute of limitations applicable to collection of this type of debt, see 20 U.S.C. §1091a(a)(2). According to Gerhardt, this second prong of the test is "meant to be 'a demanding requirement.'" Gerhardt, 348 F.3d at 92. In fact, "proving that the debtor 'is currently in financial straits' is not enough. Instead, the debtor must specifically prove 'a total incapacity . . . in the future to pay [his] debts for reasons not within [his] control.'" Id. The Fifth Circuit then lists some examples of "additional circumstances" showing this "total incapacity" to pay debts, including "'psychiatric problems, lack of usable job skills, and severely limited education.'" Id. at n.2 (quoting In re Roach, 288 B.R. 437, 445 (Bankr. E.D. La. 2003)).

Here, Plaintiff Ford has shown herself to be highly educated and well-spoken. She presented her claims in an organized manner, with supporting documentation, and made a good presentation of her position. She has shown perseverance in her pursuit of a high level of education. She has remained nearly constantly employed, despite many personal obstacles, and despite the fact that some of the jobs may not have been very likeable or did not pay her much salary. However, she has not shown herself to have the limitations noted in Gerhardt: continuing mental problems, lack of usable job skills, or a severely limited education. As such, Plaintiff has not shown that she as a total incapacity to repay the debts owed to Defendants. She fails to meet this second prong of the test.

### First Prong of Brunner/Gerhardt

The Court did not reach this factor of whether the Plaintiff can maintain, based on current income and expenses, a "minimal" standard of living if required to repay the debts. Plaintiff Ford did not meet the second requirement of a total incapacity to repay the debt, and she must meet all three factors.

Given the evidence existing on the three prongs of the Brunner/Gerhardt test, Plaintiff Ford has not shown herself entitled to a discharge of the student loans at issue. Thus, Plaintiff remains liable to pay:

9

- to ECMC:

    Loan #1, GSL, original amount of $8,500, dated Dec. 26, 1996;

    Loan #2, GSL, original amount of $7,143, dated Dec. 26, 1996;

    Loan #3, GSL, original amount of $2,857, dated May 19, 1997;

    Loan #4, GSL, original amount of $8,500, dated Aug. 5, 1997;

    Loan #5, GSL, original amount of $10,000, dated Aug. 5, 1997;

    Loan #6, GSL, original amount of $8,500, dated Aug. 18, 1995;

    Loan #7, GSL, original amount of $10,000, dated Aug. 18, 1995;

    Loan #8, GSL, original amount of $8,500, dated May 20, 1996; and

    Loan #9, GSL, original amount of $10,000, dated May 20, 1996.

- to THECB:

    Promissory Note, original amount of $7,500 covering disbursements made 8/8/1995 through 12/20/1995;

    Promissory Note, original amount of $5,223 covering disbursements made 5/17/1996 through 8/6/1996;

    Promissory Note, original amount of $1,310 covering disbursement made 11/15/1996;

    Promissory Note, original amount of $5,013 covering disbursement made 5/9/1997; and

    Promissory Note, original amount of $2,487 covering disbursements made 8/5/1997 through 12/24/1997; and

- to TGSLC, the debt it guaranteed.
- Plaintiff is not liable to pay any other prepetition student loan debt.

### Other Rulings

Nearing the end of the presentation of her case, Plaintiff sought to amend her complaint to add a claim to challenge the constitutionality of 11 U.S.C. § 523(a)(8), which the Court denied for several reasons. First, Plaintiff Ford did not timely move to amend her complaint to include such a challenge, and the lawsuit had been pending for nearly a year. Second, Plaintiff had made no effort to inform the Court that she planned to make a challenge to this federal statute or to

assure that the question was certified to the Attorney General to allow the government to intervene for the presentation of evidence and for argument on the question of constitutionality. See 28 U.S.C. 2403(a)[3] and Bankruptcy Rule 7024 (incorporating Fed. R. Civ. P. 24, Intervention). "Litigants who want a court to declare an Act of Congress unconstitutional must give notice, so that the Attorney General may exercise the statutory right to intervene on behalf of the United States to defend the law." Baker v. GTE North Inc., 110 F.3d 28, 30 (7th Cir. 1997) (citing 28 U.S.C. § 2403). In a § 523 action, the debtors/defendants raised the constitutionality of a statute as a defense to the claims made against them. That bankruptcy court placed the burden on debtors/defendants to have assured compliance with § 2403 before trial, which they had not done. The court stated that it "should not obliged at final hearing to defer trial or decision pending compliance with this statute." In re Snellgrove, 15 B.R. 149, 152 (Bankr. S.D. Fla. 1981) (challenge involved question of constitutionality of a state statute, but the procedure under § 2403 to challenge a state statute is the same as a challenge to a federal statute). There being no timely notice of her challenge to § 523(a)(8), a longstanding federal statute, there was no reason to delay decision here. Additionally, Plaintiff has a law degree and could have researched the proper procedure to bring such a challenge.

      Additionally during trial, the Court denied the Plaintiff's request to continue the trial to allow her to obtain properly authenticated documents which she could move to admit into evidence. The Court noted that the case has been pending for nearly a year, and because Plaintiff had a law degree, she should have known the requirements for documents to be admitted into evidence, or at least have known to research this issue.

      Additionally, at trial, Plaintiff moved for a default judgment against St. Mary's University, a motion the Court took under advisement to research whether this entity had been properly served with process and whether or not it had answered. The record of this suit shows that Plaintiff served a summons on St. Mary's University at its street address, and she filed an

---

[3] In any action, suit or proceeding in a court of the United States to which the United States or any agency, officer or employee thereof is not a party, wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question, the court shall certify such fact to the Attorney General, and shall permit the United States to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. The United States shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality. 28 U.S.C.A. § 2403 (a).

executed summons on July 15, 2005.  However, Plaintiff did not mail the copy of the summons and the complaint to the attention of an officer or other agent authorized by law or appointment to receive service of process on behalf of St. Mary's University.  <u>See</u> Bankruptcy Rule 7004(b).  Plaintiff Ford only addressed the summons to "St. Mary's University" and not to an officer or agent authorized to accept service on behalf of the university, therefore, service of process on St. Mary's University is insufficient.  As such, Plaintiff's motion for default judgment against St. Mary's University is denied.

  A judgment consistent with this Memorandum Opinion will be entered of even date herewith.

### 